## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | ) | |
| FOR THE USE AND BENEFIT OF | ) | |
| WESTERN EXTRALITE COMPANY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-2491-JAR/KGG |
| | ) | |
| MOHAN CONSTRUCTION, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM AND ORDER

The Miller Act protects subcontractors who provide labor or materials for government building projects.  Plaintiff Western Extralite Co. ("Western") entered an agreement to subcontract with and provide materials to Defendant Mohan Construction Inc. ("Mohan") for use in a federal building project.  Western brings the instant action against Mohan and its surety, Defendant Fidelity and Deposit Company of Maryland ("Fidelity"), under the Miller Act and various other claims to recover damages from Mohan's failure to pay for the materials Western provided.  Defendants, on the other hand, assert that Mohan previously paid Western for materials that it never received.  As a result, Defendants not only argue that Western is not entitled to any payment, but also that Defendants are entitled to recoupment and damages based on Western's fraudulent conduct, which Defendants allege as counterclaims.

This matter comes before the Court on Defendants' Motion to Dismiss Counts II & IV for Failure to State a Claim (Doc. 27) and Motion for Extension of Time to File for Leave to Join or Amend Pleadings (Doc. 50) and Plaintiffs' Motion to Dismiss Defendants' Counterclaim (Doc. 13) and Motion to Strike (Doc. 33).  Defendants argue that Plaintiffs' quantum meruit,

attorneys' fees, and bad faith damages claims are improper in this Miller Act suit.  Plaintiffs

argue that the Court lacks subject matter jurisdiction over Defendants' counterclaims and that the

Court should also dismiss the counterclaims for failure to join an indispensable party.  The

motions are fully briefed, and the Court is prepared to rule.  As fully explained below, the Court

grants in part and denies in part Defendants' motion to dismiss, denies Defendants' motion for

extension of time, denies Plaintiffs' motion to dismiss, and grants Plaintiffs' motion to strike.

## I.      Defendants' Motion to Dismiss for Failure to State a Claim

### A.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual

allegations, assumed to be true, that "raise a right to relief above the speculative level" and must

contain "enough facts to state a claim to relief that is plausible on its face."[1]  Under this standard,

"the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood

of mustering factual support for *these* claims."[2]  The plausibility standard does not require a

showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer

possibility."[4]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[5] seeks a middle

ground between heightened fact pleading and "allowing complaints that are no more than 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

[4] *Id.*

[5] 550 U.S. 544 (2007).

2

stated 'will not do.'"[6] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, courts "must take all the factual allegations in the complaint as true, [but] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

### B.    Plaintiffs' Factual Allegations

The following facts are alleged in Plaintiffs' Complaint and construed in the light most favorable to Plaintiff.[12]  In August 2009, Mohan contracted with the United States of America to construct the federal project known as the Kang Fire Station Repair and Addition project ("Kang

---

[6]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[7]*Id.* (citing *Twombly*, 550 U.S. at 556).

[8]*Iqbal*, 556 U.S. 662, 129 S. Ct. at 1949–50.

[9]*Id.* at 1950.

[10]*Id.*

[11]*Id.* at 1949.

[12]*See* Doc. 1.

project"). On September 14, 2009, Mohan, with Fidelity as surety, executed and delivered a payment bond to the USA as required by the Miller Act.[13]  Mohan then entered into a subcontract with Osborne Brothers, LLC d/b/a/ Osborne Brothers Electrical ("Osborne"). Osborne agreed to provide labor and material necessary to perform the electrical work on the Kang project. Osborne entered an account agreement with Plaintiff Western, in which Western would furnish Osborne with materials, equipment, and supplies for use on the Kang project. Osborne agreed to make payments on the account. Osborne defaulted on its subcontract with Mohan in November 2010.

In December 2010, Mohan elected to complete Osborne's work. Mohan entered into an agreement directly with Western, in which Mohan would request equipment and supplies on account for use on, and installation in, the Kang project. Mohan agreed to make payments according to Western's invoice terms and conditions. Western's terms and conditions, in part, provided that Mohan agreed to pay Western's cost of collection, including a service charge of 1.5% per month on all unpaid invoices, attorneys' fees, and expenses.

Western furnished all of the goods Mohan requested, the last of which it provided to Mohan on May 11, 2011. As of July 1, 2011, Mohan owed $53,069.49 for goods it requested from Western. Western demanded payment from Mohan and Fidelity. Neither Mohan nor Fidelity has paid any of the amount due.

Western seeks damages through breach of contract, quantum meruit, the Miller Act, and the Kansas Fairness in Private Construction Contract Act, seeking attorneys' fees under the contract and K.S.A. §§ 40-256 and 16-1903 and bad faith damages under K.S.A. § 40-256.

---

[13]*See* 40 U.S.C. § 3131(b)(2).

4

**C.      Discussion**

Defendants move to dismiss Plaintiffs' quantum meruit claims, the Kansas Fairness in

Private Construction Contract Act claim, and any claims for attorneys' fees or bad faith

damages.  Defendant argues that because Plaintiffs allege a breach of contract and Miller Act

claim, these claims are not plausible.

**1.      Quantum Meruit**

Defendants move to dismiss Count II of Plaintiffs' Complaint, the quantum meruit claim,

arguing that Plaintiffs do not seek any damages for work performed outside of the contract

between the parties and that, as a result, the quantum meruit claim is not plausible because

Plaintiffs also seek damages for breach of contract—namely, they argue that Plaintiffs cannot

seek damages on both a breach of contract and quantum meruit claim.  Plaintiffs respond,

arguing that they pleaded their breach of contract claim and quantum meruit claim in the

alternative because Defendants dispute the existence of a contract between the parties.

A plaintiff may plead a breach of contract claim and a quantum meruit claim in the

alternative if the defendant disputes the existence of a contract at issue in the lawsuit.[14]  Thus, to

succeed on a motion to dismiss a quantum meruit claim, a defendant must do more than point to

a plaintiff's complaint and argue that the plaintiff alleged a valid contract.  The defendant must

instead show that neither party disputes the existence of the valid contract governing the parties'

conduct at issue in the quantum meruit claim.[15]

---

[14]*Bettis v. Hall*, No. 10-2457-JAR, 2011 WL 1430327, at *4 (D. Kan. April 14, 2011) (citing *Ireland v. Dodson*, 704 F. Supp. 2d 1128 (D. Kan. 2010); *Delta Groups Engineering, Inc. v. Sprint Spectrum, L.P.*, 229 P.3d 420 (Kan. Ct. App. 2010)).

[15]*See id.* at *5.

Here, Defendants have not met that burden.  While Defendants argue that the Complaint alleges a valid contract and breach of that contract, they have not shown that the existence of the contract is undisputed.  Indeed, Defendants denied that a valid contract exists between the parties in their Answer to the Complaint.  Their denial makes Plaintiffs' quantum meruit claim plausible.  As a result, the Court must deny Defendants' motion to dismiss Count II for failure to state a claim.

### 2.        Attorneys' Fees and Bad Faith Damages

Defendants also move to dismiss any claims for attorneys' fees or bad faith damages, including Plaintiffs' claims under K.S.A. §§ 40-256 and 16-1903.  Defendants argue that the Miller Act does not provide for attorneys' fees and state law remedies, such as those under K.S.A. §§ 40-256 and 16-1903, are not allowed in a Miller Act suit.

The appropriateness of a remedy in a Miller Act claim is a question of federal law: "The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law."[16]  As a result, a court cannot add state law remedies to a Miller Act claim.[17]  The United States Supreme Court and Tenth Circuit, for example, have held that state law cannot be used to add attorneys' fees as a remedy in a Miller Act claim.[18]  This does not mean, however, that attorneys' fees are never available in a Miller Act claim.[19]  In fact, attorneys' fees are appropriate in a Miller Act claim if

---

[16]*F.D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 127 (1974).

[17]*See id.*

[18]*Id.*; *U.S. for Use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1543 (10th Cir. 1987).

[19]*U.S. for Use of C.J.C., Inc.*, 834 F.2d at 1543.

they are otherwise available under federal law—making attorneys' fees available as damages if the contract or the payment bond contains a provision awarding attorneys' fees.[20]  "When the agreement between the contractor and the subcontractor provides for attorneys' fees, the subcontractor may recover from the contractor and its Miller Act surety consistent with the terms of the agreement."[21]  Thus, a party has a plausible claim for attorneys' fees in a Miller Act claim if they allege facts that show a provision in the contract or payment bond providing for attorneys' fees.

### a. Attorneys' Fees for Breach of Contract Claim (Count I)

In Count I of Plaintiffs' Complaint, their breach of contract claim, Plaintiffs allege that the terms and conditions of the agreement they had with Defendants contained a provision for attorneys' fees.  Defendants have not provided any argument to dismiss this claim other than arguing that no such contract existed.  But the Court must take all factual allegations in the Complaint as true for the purpose of a motion to dismiss.  As a result, Defendants have not shown that Plaintiffs failed to state a claim for attorneys' fees in Count I.  The Court thus denies Defendants motion to dismiss the attorneys' fees in Count I.

### b. Attorneys' Fees and Bad Faith Damages for Miller Act Claim (Count III)

Plaintiffs also seek attorneys' fees, as well as bad faith damages, in Count III, the Miller Act claim.  Unlike in Count I where Plaintiffs seek attorneys' fees based on a contractual provision, Plaintiffs seek attorneys' fees and bad faith damages in Count III under K.S.A. § 40-256.  As discussed above, while attorneys' fees are allowed under a Miller Act claim when they

---

[20]*Id.*

[21]*Id.* at 1548.

are based on a provision in a contract or payment bond, state law may not be used to provide attorneys' fees.  Thus, Plaintiffs may not seek attorneys' fees as a remedy in the Miller Act claim based only on Kansas statutory law and not the contractual provision.  The Court thus dismisses Plaintiffs' claim for attorneys' fees under K.S.A. § 40-256.

For the same reasons, Plaintiffs' claim for bad faith damages under K.S.A. § 40-256 is not plausible.  Miller Act remedies are governed by federal law; bad faith damages based on state law, just like attorneys' fees based on state law, are not an appropriate remedy in a Miller Act claim.[22]  Plaintiffs cite to *K-W Industries, a Division of Associates Technologies, Ltd. v. National Surety Corp.*[23] to argue that their claim for bad faith damages should be treated differently than a claim for attorneys' fees under K.S.A. § 40-256.  Plaintiffs' reliance on *K-W Industries* is misguided.  Here, unlike the plaintiff in *K-W Industries*, Plaintiffs do not seek bad faith damages in a suit independent of the Miller Act claim.[24]  Plaintiffs instead incorporate their bad faith damages into the Miller Act claim, seeking the bad faith damages as remedies for the Miller Act violation.  Even in Plaintiffs' response, they admit the inappropriateness of any state law remedy in a Miller Act claim: "The Federal Courts have held that a party cannot assert a state law **remedy** in a Miller Act claim, but a party certainly can bring a pendant state law claim in the same lawsuit.  If a contractor wishes to recover under a breach of contract or other state law theory, said contractor must specifically plead a free standing state law claim."[25]  Plaintiffs

---

[22]*See F.D. Rich Co.*, 417 U.S. at 127; *see also U.S. ex rel Cal's A/C & Elec. v. Famous Constr. Corp.*, 220 F.3d 326, 327 (5th Cir. 2000); *Consol. Elec. & Mechs., Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 435 (8th Cir. 1999).

[23]855 F.2d 640 (9th Cir. 1988).

[24]*See id.* at 643.

[25]Doc. 42 at 7 (citing *Consol. Elec. & Mechs., Inc.*, 167 F.3d at 435).

have not pleaded a free standing state law claim for bad faith damages under K.S.A. § 40-256 but instead include it merely as a remedy.  The Court therefore dismisses Plaintiffs' claim for bad faith damages under K.S.A. § 40-256 in Count III of their Complaint.

      **c.**      **Damages and Attorneys' Fees for Kansas Fairness in Private Construction Contract Act Claim (Count IV)**

In Count IV of their Complaint, Plaintiffs seek damages and attorneys' fees under K.S.A. § 16-1903, the Kansas Fairness in Private Construction Contract Act.  Defendants' argument to dismiss Count IV is the same as its argument to dismiss Plaintiffs' claim for damages under K.S.A. § 40-256—state law damages are not allowed in a Miller Act suit.  But unlike Plaintiffs' claims for bad faith damages and attorneys' fees under K.S.A. § 40-256, which Plaintiffs sought as remedies for their Miller Act claim, Plaintiffs seek damages under K.S.A. § 16-1903 in a independent state law claim.  While a Miller Act claim itself will not incorporate state law remedies, it does not preclude independent state law causes of action for fees in addition to those available under the Miller Act.[26]  The Court therefore cannot dismiss Plaintiffs' independent state cause of action under K.S.A. § 16-1903 merely because Plaintiffs included it in the same Complaint as their Miller Act claim.  Because Defendants give no other reason for dismissal, the Court denies Defendants' motion to dismiss Count IV of the Plaintiffs' Complaint.

**II.**      **Plaintiffs' Motions to Dismiss Counterclaims**

Resolving all of Defendants' arguments in their motion to dismiss, the Court now moves to Plaintiffs' motion to dismiss Defendants' counterclaims.  Plaintiffs move to dismiss Defendants' counterclaims, arguing that Defendants failed to include a jurisdictional statement,

---

[26]*See F.D. Rich Co.*, 417 U.S. at 127; *see also Famous Constr. Corp.*, 220 F.3d at 327; *Consol. Elec. & Mechs., Inc.*, 167 F.3d at 435.

9

that Defendants' counterclaims lack subject matter jurisdiction, and that Defendants failed to

join an indispensable party—Osborne.  Because Defendants' counterclaims are compulsory,

giving the Court jurisdiction, and because Plaintiffs have failed to show that Osborne is a

necessary and indispensable party, the Court denies Plaintiffs' motion to dismiss.[27]

A.      **Motion to Dismiss for Failure to Allege and Lack of Subject Matter Jurisdiction**

Plaintiffs move to dismiss Defendants counterclaims because Defendants failed to

include a jurisdictional statement in their claim for relief.  Plaintiffs also assert that, even if

Defendants had included a jurisdictional statement, the Court must dismiss Defendants'

counterclaims because there is no basis for subject matter jurisdiction over the counterclaims.

Federal Rule of Civil Procedure 8(a)(1) requires that any claim for relief, including a

counterclaim, must contain a short and plain statement of the grounds for jurisdiction, unless the

court already has jurisdiction and the claim needs no new jurisdictional support.  Defendants'

counterclaims indeed fail to contain a short and plain statement of the grounds for jurisdiction.

Defendants, however, assert that because the Court already has jurisdiction over the

counterclaims as compulsory counterclaims, Defendants need not include a jurisdictional

statement.

While a permissive counterclaim must rest on independent jurisdictional grounds, a

compulsory counterclaim under Rule 13(a) derives its jurisdiction from the same source as the

---

[27]Plaintiffs also argue in their Reply that Defendants have no basis for supplemental jurisdiction.  Because the Court finds that Defendants' counterclaims are compulsory under the Tenth Circuit precedent in *Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*, the Court does not determine whether Defendants' counterclaims also have supplemental jurisdiction.  503 F.2d 1193, 1198 (10th Cir. 1974).

original claim.[28]  Thus, if Defendants' counterclaims are compulsory, the Court already has

subject matter jurisdiction over the counterclaims and the Court need not dismiss them for failure

to include a jurisdictional statement or lack of subject matter jurisdiction.[29]  Although judicial

economy will not be served by trying two separate and distinct lawsuits in one action, trying two

related claims in one lawsuit allows parties to avoid the multiplicity of separate suits.[30]

Recognizing this balance, Rule 13 defines a counterclaim as compulsory if it arises out of the

same transaction or occurrence as the subject matter of the original claim.[31]  The terms

"transaction" and "occurrence" have flexible and realistic constructions so that parties can

resolve all related controversies in one action.[32]  To determine whether the counterclaim arises

out of the same transaction or occurrence, courts must consider the following factors: (1)

whether the issues and facts raised by the claim and counterclaim are generally the same, (2)

whether a subsequent suit on the counterclaim would be barred by res judicata, (3) whether the

parties will use substantially the same evidence to support or refute both the claim and the

counterclaim, and (4) whether any logical relation between the claim and the counterclaim

exists.[33]  The most controlling factor is whether the claim and counterclaim logically relate to

one another.[34]

---

[28]*Pipeliners Local Union No. 798*, 503 F.2d at 1198.

[29]*Id.*

[30]*See id.*

[31]Fed. R. Civ. P. 13(a)(1).

[32]*Pipelines Local Union No. 798*, 503 F.2d at 1198.

[33]*Fox v. Maulding*, 112 F.3d 453, 457 (10th Cir. 1997) (quoting *Pipelines Local Union No. 798*, 503 F.2d at 1198).

[34]*Pipelines Local Union No. 798*, 503 F.2d at 1198.

Here, Defendants assert that their counterclaims arise out of the same transaction or occurrence as Plaintiffs' Miller Act claim.  To succeed on the Miller Act claim, Plaintiffs must prove: (1) that it furnished labor or materials for use in the contract for repair of public buildings or work of the United States; (2) that it has a direct contractual relationship with the contractor; (3) that it performed the work required under the contract; (4) that it sent proper notice to the contractor of the amount due on the contract; and (5) that it was not paid the full amount that it was entitled to be paid.[35]  Defendants argue that they are not liable under the Miller Act claim in part because Plaintiffs are not entitled to any payment.  Defendants assert that they previously paid Plaintiff Western on its fraudulently created invoice for materials never delivered.  This defense to Plaintiffs' Miller Act claim raises the same issues and facts as Defendants' counterclaims for recoupment, fraud, misrepresentation, negligent misrepresentation, and bad faith.  Plaintiffs will need to present the same evidence to overcome these arguments in their Miller Act claim as they will to defend against Defendants' counterclaims.  Although Plaintiffs argue that the claims do not arise out of the same transaction because Defendants' counterclaims arose before Western formalized an agreement with Defendants, all of the allegations—both Plaintiffs' and Defendants'—arise out of the Kang project, including what materials Western supplied to the project and whether Western is entitled to payment for materials supplied to the project.  Considering the totality of the facts and allegations of each party, the claims have a logical relation, which is the most controlling factor.  Even without determining whether res judicata would bar a subsequent trial, the factors strongly favor finding that Defendants' counterclaims are compulsory.  Including all of the related claims in one lawsuit will promote

---

[35]40 U.S.C. § 3133; *see also U.S. for Use & Benefit of Pro Controls Corp. v. Conectiv*, No. 00-4024-JAR, 2003 WL 22025016, *11 (D. Kan. Aug. 27, 2003).

judicial economy and avoid the multiplicity of separate suits.  The Court thus finds that Defendants' counterclaims are compulsory, and as a result, the Court has subject matter over them.  The Court therefore denies Plaintiffs' motion to dismiss for failure to allege and lack of subject matter jurisdiction.

### B.      Motion to Dismiss for Failure to Join an Indispensable Party

Plaintiffs next move to dismiss Defendants' counterclaims under Rule 12(b)(7) for failure to join an indispensable party as required under Rule 19, arguing that Osborne is a necessary and indispensable party that cannot be joined.  Courts determine whether to grant a Rule 12(b)(7) motion using the three-step process outlined in Rule 19.  Under the first step, courts must determine whether the absent party is necessary.[36]  A party is necessary (1) if, without the party, the court cannot accord complete relief among those already party to the suit or (2) if the absent party claims an interest in the subject of the action and is so situated that disposing of the action without joining that party would impair or impede the absent party's ability to protect the interest or leave an existing party at risk of incurring multiple or inconsistent obligations.[37]

If a court determines that the absent party is necessary, the court must proceed to the second step and determine whether joinder of the party is feasible.[38]  If joinder is not feasible, the court must proceed to the last step and determine whether the absent party is indispensable, such that in equity and good conscience the suit cannot continue in the party's absence.[39]  Factors

------

[36]Fed. R. Civ. P. 19(a).

[37]*Id.*

[38]Fed. R. Civ. P. 19(b).

[39]*Id.*

courts consider in determining the indispensability of a party include the following: (1) the extent to which a judgment rendered in the party's absence would prejudice the absent party or those who are parties to the suit, (2) the extent to which the Court can minimize prejudice with protective provisions in the judgment, (3) whether judgment in the party's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed.[40]

Plaintiffs contend that Osborne is a necessary party, but besides citing to Rule 19 and making conclusory statements to that effect, Plaintiffs offer no evidence, either by affidavit or by other extra-pleading evidence, to show how Osborne is necessary to the suit. Plaintiffs do not assert that Osborne claims an interest in the subject matter of the lawsuit; nor do Plaintiffs give any evidence to show that the Court cannot accord complete relief among the existing parties. As a result, the Plaintiffs have failed to show the first step of the process—that Osborne is a necessary party. Further, besides again making conclusory statements, Plaintiffs do not address the third step of the analysis, whether in equity and good conscience the action could continue without Osborne's joinder. Consequently, Plaintiffs do not meet their burden in demonstrating that Osborne is a necessary and indispensable party under Rule 19. As such, the Court has no basis to grant a motion to dismiss under Rule 12(b)(7), and the Court denies Plaintiffs' motion.

## III.     Defendants' Motion for Extension of Time to File Leave to Amend

Because the Court is denying Plaintiffs' motions to dismiss for lack of subject matter jurisdiction and failure to join an indispensable party, Defendants' motion for extension of time to file leave to amend is moot and the Court denies it as such.

## V.     Plaintiffs' Motion to Strike

---

[40]*Id.*

Plaintiffs move to strike the affidavits filed by Defendants, titled Rule 12(b)(1) and 26

Filings and Supplements.  Plaintiffs argue that these affidavits are Defendants' Rule 26

disclosures and, as a result, should not be filed with the Court.  Defendants argue that the

affidavits support their response to Plaintiffs' motion to dismiss for lack of subject matter

jurisdiction.  If these affidavits are merely Rule 26 disclosures, the Court must strike them.

Under District of Kansas Rule 26.3, a party must not file disclosures required under Federal

Rules of Civil Procedure 26 with the Court.  If these affidavits were filed as exhibits for

Defendants' response, they are untimely and thus are stricken.  Under District of Kansas Rule

6.1(d), a party must file and serve a response to a motion to dismiss within 21 days.  Defendants

filed the affidavits nearly two months after the Plaintiffs' motion to dismiss.  The Court therefore

grants Plaintiffs' motion to strike Documents 29, 30, 31, and 32.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to

Dismiss Counts II and IV for Failure to State a Claim (Doc. 27) is GRANTED IN PART and

DENIED IN PART.  The Court grants Defendants' motion to dismiss attorneys' fees and bad

faith damages under K.S.A. § 40-256 in Count III of Plaintiffs' Complaint.  The Court denies

Defendants' motion to dismiss Count II, Count IV, and attorneys' fees under Count I.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Defendants'

Counterclaim for Lack of Jurisdiction (Doc. 13) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time to File

for Leave to Join or Amend Pleadings (Doc. 50) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Doc. 33) is GRANTED.

Documents 29, 30, 31, and 32 are stricken from the record.

15

**IT IS SO ORDERED**.

Dated: <u>March 15, 2012</u>

 <u>S/ Julie A. Robinson </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
